### THE ROBERT HEDGER.

### THE WYOMISSING.

### THE McLAIN LINE NO. I.

### THE MAGNETIC.

### THE J. A. MOWINCKEL.

### THE CLEARY NO. 77.

### THE CAPE JONES.

Nos. 17574, 17572, 17562, 18035, 17961.

District Court, E. D. New York.
May 8, 1947.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for "Anthony O'Boyle" and McLain Line, Inc.

Foley & Martin, of New York City (Christopher E. Heckman and Louis J. Lawrence, both of New York City, of counsel), for Cleary Brothers.

Frank G. Colgan, of Brooklyn, for M. & J. Tracy.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for Reading Co.

Kirlin, Campbell, Hickox & Keating, of New York City (Joseph Arcoleo and Raymond T. Greene, both of New York City, of counsel), for Panama Transp. Co.

ABRUZZO, District Judge.

The tug "Wyomissing" on the early morning of May 15, 1945, had nine loaded coal barges in tow on two hawsers approximately 300 feet in length. The barges were made up three abreast, in three tiers. The tug "Magnetic" was the assisting tug on the port side toward the rear of the tow. This tow had proceeded by the ferry slips at St. George, Staten Island, and then headed over toward Owl's Head Buoy. The weather was clear and it was just about the end of the flood tide.

The tanker "Mowinckel" was proceeding through the anchorage area off Staten Island. One whistle signals were exchanged. The tanker proceeded across the bow of the tug "Wyomissing" and dropped her anchor. Shortly thereafter there was a collision between the barges and the tanker.

Libels were drawn by four of the barges in the tow against the tug "Wyomissing" and the tug "Magnetic," which in turn impleaded the "Mowinckel," which in turn libeled them for damages to the tanker.

The testimony on behalf of the "Mowinckel" indicates that this tanker threw out an anchor chain at the bow and then ran about 300 feet to make the anchor chain taut before stopping. While in that position for a few minutes the coal barges being towed collided at a point about 20 feet from the stern of the tanker on the port side. The "Mowinckel" reversed its engines at the time it stopped to take the weight off the chain but made no headway astern.

The tug "Wyomissing" claims the collision occurred because the tanker "Mowinckel" after it anchored made sternway into the path of the tug "Wyomissing" and that this backward motion caused the collision.

Captain Moran of the "Wyomissing" who just prior to the collision came into the pilot house of the tug to relieve Captain Victor testified that he did not see the tanker make a backward movement, but that he figured that the tanker must have backed up because the "Wyomissing" could not swing away from it. His lookout testified that he saw the tanker anchoring but gave no warning that the tanker was backing up.

Captain Victor who at the time of the collision was operating the "Wyomissing" testified that it seemed to him that the tanker came back. When pressed, he testified that the tanker had sternway and was moving.

I find no proof in this case that the tanker made any backward movement. The evidence offered by the "Wyomissing" that a backward motion took place is, to say the least, vague and unreliable. There is positive evidence on behalf of the tanker through witnesses that it stopped after it threw out its anchor and that while it was in this standing position the collision took place. Captain Murray of the barge "Cape Jones" and Captain Carmen of the barge

"Cleary No. 77" both testified that the tanker was not moving. This conclusion is amply corroborated by the fact that the tug got safely by with 300 feet of hawser before the collision took place.

It is evident that the tug "Wyomissing" was entirely and solely at fault. I absolve the helping tug "Magnetic" from any responsibility. There is not the slightest scintilla of negligence on its part.

Submit findings of fact and conclusions of law in accordance with this decision.